# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

MCC Mortgage LP,

                Plaintiff,

Civ. No. 10-191 (RHK/JJK)
**MEMORANDUM OPINION AND ORDER**

v.

Office Depot, Inc.,

                Defendant.

Kevin R. Coan, Laura N. Maupin, Barnes & Thornburg LLP, Minneapolis, Minnesota, for Plaintiff.

Ronn B. Kreps, Andre T. Hanson, Sparrowleaf Dilts McGregor, Fulbright & Jaworski LLP, Minneapolis, Minnesota, for Defendant.

## INTRODUCTION

In this action, Plaintiff MCC Mortgage LP ("MCC") sued Defendant Office Depot, Inc. ("Office Depot") in Minnesota state court, seeking to evict it from certain commercial property it had leased from MCC. Office Depot timely removed the action to this Court, asserting diversity jurisdiction. MCC now moves to remand. For the reasons set forth below, the Court will deny the Motion.

## BACKGROUND

The following facts are gleaned from the parties' pleadings and the documents attached thereto. In 1999, MCC leased to Office Depot, a nationwide chain of office-

supply stores, nearly 27,000 square feet of retail space at an office/retail complex in Minneapolis known as Minneapolis City Center.[1]  Pursuant to the lease, Office Depot agreed to pay MCC a monthly rent of slightly more than $15,000.  The lease was for an initial ten-year term, and Office Depot, at its discretion, had the option to renew it for additional five-year terms, up to four times (*i.e.*, up to an additional 20 years); the rent would change with each renewal, but would always remain at least $10,000 per month.

The presence of other retail stores at Minneapolis City Center was an important consideration for Office Depot entering into the lease, as such stores would drive customers to the Office Depot location.  Accordingly, MCC agreed to include in the lease an incentive for Office Depot:  a "rent-abatement" provision.  Under that provision, MCC agreed that if less than 65% of the space in Minneapolis City Center were leased to retail establishments, Office Depot's rent would be abated – that is, it would owe no rent – until the retail occupancy exceeded 65%.

Beginning in mid-2003, the required retail occupancy level at Minneapolis City Center was not achieved.  Accordingly, Office Depot invoked the rent-abatement provision and informed MCC that it would not be paying rent.  MCC agreed with Office Depot's assessment and abated its rent.  That abatement continued for more than 5 years, into 2009, after Office Depot had exercised its first renewal option.

---

[1] The lease actually was between City Center Associates Limited Partnership ("City Center") and Office Depot, but City Center subsequently assigned its interest in the property to MCC.  For ease of reference, the Court refers to the lessor/Plaintiff as MCC throughout this Memorandum Opinion and Order.

According to Office Depot, MCC eventually tired of having a rent-free tenant in prime Minneapolis real estate and began coming up with ways to justify Office Depot's eviction. In early 2009, it sent Office Depot a letter complaining of sign and awning problems at the store. Office Depot quickly corrected the sign problems but could not correct the awning problem without MCC's approval, which, according to Office Depot, was slow in coming. Approval was finally granted in October 2009, and Office Depot then undertook the task of hiring a contractor to fix the problem, but repairs were not completed until January 2010. In the meantime, MCC claimed that Office Depot's failure to remedy the problem within 30 days of being authorized to do so rendered it in default under the lease – it then asserted that the rent-abatement provision no longer applied and began demanding monthly rent, which Office Depot has not paid.

On December 29, 2009, MCC commenced the instant action in Hennepin County District Court, seeking Office Depot's eviction pursuant to Minnesota Statutes § 504B.001 *et seq.*; the matter was set for a hearing on January 11, 2010. Office Depot answered the Complaint and demanded a jury trial, and at the January 11 hearing, the parties jointly agreed to a February 2, 2010, trial date before a Hennepin County District Court Judge. A short time later, MCC amended its Complaint, and Office Depot then removed the action to this Court, invoking diversity jurisdiction. In its Notice of Removal, Office Depot asserted that the $75,000 amount-in-controversy requirement has been satisfied because "the value of the alleged right sought to be enforced by Plaintiff in this action, recovery of the property or the forced payment of rent in contravention of the

Lease's abatement provision, . . . exceeds $100,000 for this year alone, and exceeds $2,000,000.00 for the remaining life of the lease." (Notice of Removal ¶ 6.)

MCC then moved to remand this action to state court. In its Motion, it asserted that an eviction action under Chapter 504B seeks possession of property only and not damages, and therefore the $75,000 jurisdictional threshold had not been met. After reviewing MCC's Motion, the Court, *sua sponte*, also raised two additional issues: (1) whether jurisdiction is lacking because of the summary nature of eviction proceedings versus the plenary nature of civil actions in federal court, and (2) whether the Court should abstain from hearing this action even if subject-matter jurisdiction exists.[2] The Court directed Office Depot to address these issues in writing on or before February 8, 2010. Office Depot timely filed a response, and on February 10, 2010, MCC filed a reply. The matter is now ripe for disposition.

## ANALYSIS

## I. The amount in controversy

### A. Removal and remand generally

28 U.S.C. § 1441(a) permits the removal of "any civil action brought in a State court of which the district courts of the United States have original jurisdiction." If a case over which the Court lacks jurisdiction is removed from state court, it must be remanded. 28 U.S.C. § 1447(c).

---

[2] The Court also questioned whether Office Depot had established that the parties are citizens of different states, but that issue has been resolved. (See Mem. in Opp'n at 19.)

Under the diversity-jurisdiction statute, district courts enjoy original jurisdiction over cases between citizens of different states where the amount in controversy exceeds $75,000. 28 U.S.C. § 1332(a). Where a case is removed on diversity grounds, the defendant bears the burden of establishing that the amount-in-controversy requirement has been satisfied. E.g., Bell v. Hershey Co., 557 F.3d 953, 956 (8th Cir. 2009). If the complaint does not specify an amount in controversy, the defendant must show by a preponderance of the evidence that the jurisdictional threshold has been met. E.g., In re Minn. Mut. Life Ins. Co. Sales Practices Litig., 346 F.3d 830, 834 (8th Cir. 2003). Stated differently, in such a situation a removing defendant must show that the claims "could, that is might, legally satisfy the amount in controversy requirement." James Neff Kramper Family Farm P'ship v. IBP, Inc., 393 F.3d 828, 831 (8th Cir. 2005); accord, e.g., Kopp v. Kopp, 280 F.3d 883, 885 (8th Cir. 2002) ("The jurisdictional fact . . . is not whether the damages *are* greater than the requisite amount, but whether a fact finder *might* legally conclude that they are.") (emphases added).

**B.      The amount-in-controversy requirement here**

The crux of MCC's argument is that this action seeks only repossession of the leased property, not damages (save *de minimis* costs and disbursements incurred in connection with filing this case). (See Pl. Mem. at 6.) Because eviction actions in Minnesota "provide [no] vehicle for a monetary award," it argues that this lawsuit "does not meet the 'amount in controversy' requirement of 28 U.S.C. § 1332(a)." (Id. at 6-7.) In support, it has cited one case: Mousel v. Knutson Mortgage Corp., 823 F. Supp. 658

(D. Minn. 1993) (MacLaughlin, J.).  The facts and procedural history of <u>Mousel</u> are complicated and need not be repeated here.  Suffice it to say, <u>Mousel</u> concerned several lawsuits arising out of the foreclosure of a mortgage on real property on which Brett Mousel lived.  One such lawsuit was an unlawful-detainer action commenced against Mousel by his mortgagee (Knutson), which had been removed to this Court.  In dicta, <u>Mousel</u> noted that remand of the unlawful-detainer action was appropriate because the Court lacked diversity jurisdiction:

> In order for diversity jurisdiction to exist, the action must be between parties of different states, and the amount in controversy must exceed $50,000.  28 U.S.C. § 1332(a).  Although the parties to this action are citizens of different states, the amount in controversy does not exceed $50,000.  In its unlawful detainer action, Knutson seeks only restitution of the premises and its costs and disbursements.  Because Knutson's complaint does not meet the amount in controversy requirement, diversity jurisdiction does not exist.

<u>Id.</u> at 662.  MCC seizes on this dicta to argue that diversity jurisdiction is lacking here. The Court does not agree.

It is true that the Complaint in this case seeks only repossession of the leased property and not monetary damages.  But federal courts often are confronted with cases seeking various types of non-monetary relief, such as declaratory judgments, confirmation or vacation of arbitration awards, injunctions, and other equitable remedies. Under MCC's logic, subject-matter jurisdiction would be lacking in all such actions, because no money damages are sought therein.  Clearly that is not the law.  <u>See, e.g.</u>, <u>City of Univ. City, Mo. v. AT&T Wireless Servs., Inc.</u>, 229 F. Supp. 2d 927, 933 (E.D. Mo. 2002) ("It is the substance of the claim, not the conclusory recitation of its worth, that will

determine if federal jurisdiction is extant.").  Instead, "[t]he amount in controversy is tested by the value of the suit's intended benefit to the plaintiff."  Mass. State Pharm. Ass'n v. Fed. Prescription Serv., Inc., 431 F.2d 130, 132 (8th Cir. 1970); accord, e.g., Advance Am. Servicing of Ark., Inc. v. McGinnis, 526 F.3d 1170, 1173 (8th Cir. 2008); Burns v. Mass. Mut. Life Ins. Co., 820 F.2d 246, 248 (8th Cir. 1987).  "Thus, a court should examine the value of the right the plaintiff seeks to enforce, or put differently, the object the plaintiff seeks to accomplish through litigation."  Garland v. Mortgage Elec. Registration Sys., Inc., Civ. Nos. 09-71, 09-72, 09-342, 09-430, 2009 WL 1684424, at *1 (D. Minn. June 16, 2009) (Ericksen, J., adopting Report & Recommendation of Graham, M.J.).  Mousel makes no mention of this principle, and accordingly the Court declines to follow its dicta regarding diversity jurisdiction.[3]

In the Court's estimation, the correct view is that espoused in A. Levet Properties Partnership v. Bank One, N.A., Nos. Civ. A. 03-1708, 03-1373, 2003 WL 21715010 (E.D. La. July 21, 2003), and Dickal 770 L.L.C. v. PRN Corp., No. 02 C 3206, 2002 WL 1285813 (N.D. Ill. June 10, 2002).  Those cases more closely parallel the instant action, as each concerned the eviction of a tenant under a commercial lease.  A. Levet and Dickal concluded that the amount in controversy should be measured by the difference between

_____

[3] For the same reason, the Court declines to follow Koochiching County v. Erickson, Civ. No. 04-3477, 2005 WL 1432347, at *1 (D. Minn. Mar. 7, 2005) (Tunheim, J., adopting Report & Recommendation of Erickson, M.J.), which summarily adopted Mousel's amount-in-controversy dicta.  See also JPMorgan Chase Bank, N.A. v. Coleman, Civ. No. G-06-688, 2007 WL 655629, at *2 (S.D. Tex. Feb. 27, 2007) (concluding without analysis that eviction action did not satisfy $75,000 threshold for diversity jurisdiction since action sought only possession of property).

the plaintiff's current economic position and its position if successful in the litigation – that is, if it obtained possession of the premises and then re-leased it to another tenant. <u>A. Levet</u>, 2003 WL 21715010, at *3 ("If A. Levet were able to re-lease the premises to another tenant at a monthly rental amount greater than what it would receive from [the defendant] under the Lease, then the value of possession could be measured as the difference between the rent received from the new tenant and the rent A. Levet would have received from [the defendant]."); <u>Dickal</u>, 2002 WL 1285813, at *3 n.3 ("The value to the landlord in terminating such a lease would be that it could re-let the premises for a higher rent."); <u>see also</u> <u>Woodmen of World Life Ins. Soc'y v. Great Atl. & Pac. Tea Co.</u>, 561 F. Supp. 640, 642 (N.D. Ill. 1982); <u>Ezon v. Cornwall Equities Ltd.</u>, 540 F. Supp. 885, 887 (S.D. Tex. 1982); <u>Bally Total Fitness Corp. v. Contra Costa Retail Ctr.</u>, 384 B.R. 566, 571 (Bankr. N.D. Cal. 2008). Calculating the amount in controversy in this fashion comports with the Eighth Circuit's mandate that the jurisdictional amount be measured by the intended benefit to the plaintiff.

Here, the difference between MCC's current position *vis-a-vis* the property and its position if it successfully evicts Office Depot is significant. Office Depot currently pays no rent, as a result of the rent-abatement provision in the lease. If MCC were able to evict Office Depot and re-lease the property, however, it likely could collect substantial rent. Indeed, absent the rent-abatement provision, Office Depot would be paying monthly rent greater than $10,000; the value of the leasehold, therefore, is substantial. Accordingly, the Court concludes that Office Depot has shown by a preponderance of the evidence that

MCC's claims "could, that is might, legally satisfy the amount in controversy requirement." James Neff, 393 F.3d at 831.

At oral argument, MCC asserted that its ability to re-lease the property is unknown, particularly in the current real-estate market. But "the mere fact that there are certain contingencies and uncertainties does not necessarily defeat the jurisdiction of this court in computing the value . . . that plaintiff is seeking." Stengrim v. Nw. Mut. Life Ins. Co., Civ. No. 04-3192, 2004 WL 2390070, at *3 (D. Minn. Oct. 25, 2004) (Kyle, J.) (internal quotation marks and citation omitted). Similarly, MCC also argued that there is no way to know how much rent it could collect even if it successfully re-leased the property. Yet, absolute certainty of the amount at issue is not required. Hedberg v. State Farm Mut. Auto. Ins. Co., 350 F.2d 924, 928 (8th Cir. 1965) (Blackmun, J.). Even when the right the plaintiff seeks to enforce "may not be capable of exact valuation in money, this fact of itself does not negative federal jurisdiction." Id. at 929. Instead, Office Depot must simply show that the right of possession MCC seeks to enforce *might* satisfy the jurisdictional threshold. James Neff, 393 F.3d at 831. Given the rent agreed to by Office Depot in the lease, which is currently being abated, the size of the premises, and its prime location in downtown Minneapolis on Nicollet Mall, the Court concludes that MCC stands to gain significantly – far in excess of $75,000 – if it is successful in this action. Accordingly, Office Depot has satisfied its burden of establishing jurisdiction here.

A strong prudential reason also supports the Court's conclusion. If, before MCC had commenced its eviction action, Office Depot had sued MCC seeking a declaration

that it was not in breach of the lease, the Court would have been obligated to assess the amount in controversy based on the value of the object of the litigation – that is, the value to Office Depot in continuing to remain in the property rent-free.  See, e.g., Hunt v. Wash. State Apple Advertising Comm'n, 432 U.S. 333, 347 (1977); Fitzgerald Railcar Servs. of Omaha, Inc. v. Chief Transp. Prods., Inc., No. 8:02CV339, 2003 WL 21344535, at *2 (D. Neb. June 10, 2003), aff'd, 141 Fed. Appx. 491 (8th Cir. 2005).  Given the multi-year term of the lease and the amount of rent Office Depot otherwise would be obligated to pay for such a large amount of downtown real estate, this amount clearly would have exceeded $75,000.  In other words, if Office Depot simply had sued first, the Court would not have hesitated to find jurisdiction.  See Fitzgerald, 141 Fed. Appx. at 492-93 (in action seeking declaration that commercial lease had not been breached, the value of the object of litigation was "not measured simply by the amount in alleged default, . . . *but also by the value of the lease agreement if terminated*"; diversity found because plaintiff had "a significant economic stake in continuing the lease that well exceeds the jurisdictional requirement") (emphasis added).  The propriety of Office Depot's removal simply should not turn on the fact that it lost the race to the courthouse. See, e.g., Maloan v. Bancorpsouth Bank, Inc. , No. 01-1366, 2002 WL 1397266, at *3 (W.D. Tenn. Mar. 29, 2002).

For these reasons, the Court concludes that the amount-in-controversy requirement has been satisfied here.[4]

## II.    Summary versus plenary

In its earlier Order, the Court *sua sponte* questioned whether the nature of this eviction proceeding deprives it of subject-matter jurisdiction. Several courts have concluded that they lack jurisdiction over eviction actions because "there is no authorization for summary adjudication of rent and possession actions contained within the Federal Rules of Civil Procedure or authorized by any other statute governing federal court procedures." CPG Fin. I, L.L.C. v. Shopro, Inc., No. 06-3015, 2006 WL 744275, at *3 (W.D. Mo. Mar. 22, 2006); accord, e.g., Harvard Real Estate-Allston, Inc. v. KMART Corp., 407 F. Supp. 2d 317, 320-32 (D. Mass. 2005); United Mut. Houses, L.P. v. Andujar, 230 F. Supp. 2d 349, 354 (S.D.N.Y. 2002); MRM Mgmt. Co. v. Ali, No. 97-CV-1029, 1997 WL 285043, at *1 (E.D.N.Y. May 27, 1997); Glen 6 Assocs., Inc. v. Dedaj, 770 F. Supp. 225, 227-28 (S.D.N.Y. 1991).

Key to these cases was the limited nature of eviction proceedings under the laws of the states in which they arose. For instance, the Missouri statutes at issue in CPG did not

_____

[4] Some courts, as well as counsel for MCC, have expressed concern over the burden that would be imposed on the federal-court system if defendants were permitted to remove eviction actions. See, e.g., BEM I, L.L.C. v. Anthropologie, Inc., No. 98 C 358, 1999 WL 1212643, at *5 n.7 (N.D. Ill. Dec. 14, 1999); Glen 6 Assocs., Inc. v. Dedaj, 770 F. Supp. 225, 229 (S.D.N.Y. 1991). Yet, as the Seventh Circuit has noted, such concerns are largely illusory, since most tenants are citizens of the same state as their landlords, do not pay tens of thousands of dollars per month in rent, and do not have multiple-year leases. BEM I, L.L.C. v. Anthropologie, Inc., 301 F.3d 548, 553 (7th Cir. 2002). In other words, in most instances eviction actions will not satisfy the prerequisites for diversity jurisdiction.

require the filing of a formal pleading to institute the action; did not provide for discovery or a trial by jury; and required the matter to be handled on an expedited basis. 2006 WL 744275, at \*2 (citing Mo. Rev. Stat. §§ 535.010, .020, .030). The same was true of the New York statutes discussed in <u>Andujar</u>, <u>Ali</u>, and <u>Glen 6</u>. By contrast, the Minnesota statutes governing eviction proceedings are broader.

Although Minnesota Statutes Section 504B.001 defines an "eviction" as "a *summary* court proceeding to remove a tenant or occupant or otherwise recover possession of real property" (emphasis added), such actions do not bear the traditional hallmarks of "summary" proceedings. A summary proceeding is a "nonjury proceeding that settles a controversy or disposes of a case in a relatively prompt and simple manner." <u>CPG</u>, 2006 WL 744275, at \*2 (quoting Black's Law Dictionary 1222 (7th ed. 1999)); <u>accord, e.g.</u>, <u>N.H. Fire Ins. Co. v. Scanlon</u>, 362 U.S. 404, 406 (1960) ("Summary trials . . . may be conducted without formal pleadings, on short notice, without summons and complaints, generally on affidavits, and sometimes even ex parte."). Eviction actions in Minnesota, however, are required to be commenced by a complaint, and the defendant must be served with a summons. Minn. Stat. § 504B.321, subd. 1(a), (c). The defendant may file an answer, <u>id.</u> § 504B.335(a), and more importantly, either party may demand a trial by jury, <u>id.</u> § 504B.335(b). Although such actions typically are resolved in a short timeframe, continuances are permitted, <u>id.</u> § 504B.341, and the losing party may appeal, <u>id.</u> § 504B.371. Simply put, eviction actions in Minnesota are handled in precisely the same fashion as "other civil actions." <u>Id.</u> § 504B.335(c). Accordingly, the Court

concludes that the so-called "summary" nature of eviction proceedings does not provide a basis for remand. See Safeway, Inc. v. Sugarloaf P'ship, LLC, 423 F. Supp. 2d 531, 536 (D. Md. 2006) (court could entertain eviction proceeding under Maryland law even though such proceeding is summary).

At oral argument, MCC asserted that federal courts are ill-equipped to handle the expedited nature of summary eviction proceedings. But that contention is meritless; the Court is the master of its own calendar and can set this matter for trial quickly. At any rate, "the presence of different or more expeditious procedures in state court is not a reason to deny the existence of federal diversity jurisdiction." Id. at 535-36.

The Court is cognizant that, in some circumstances, exceptions to federal diversity jurisdiction have been recognized even though the parties are citizens of different states and the amount-in-controversy requirement has been satisfied. For example, the Supreme Court has long recognized both a probate exception and a domestic-relations exception to diversity jurisdiction. See, e.g., Marshall v. Marshall, 547 U.S. 293, 308 (2006). Yet, there is no similar prohibition on the exercise of jurisdiction over eviction proceedings, summary or not. E.g., Swords to Plowshares v. Kemp, 423 F. Supp. 2d 1031, 1037 (N.D. Cal. 2005) ("Numerous cases support the finding that unlawful detainers are subject to removal."); Safeway, 423 F. Supp. 2d at 536; Mut. First, Inc. v. O'Charleys of Gulfport, Inc., 721 F. Supp. 281, 282 (S.D. Ala. 1989); Rubel-Jones Agency, Inc. v. Jones, 165 F. Supp. 652, 654 (W.D. Mo. 1958); see also Laskin Road Assocs., L.P. v. Capitol Indus., Inc., No. 2:07cv103, 2007 WL 1655336 (E.D. Va. June 5, 2007) (entertaining eviction

action without discussion of jurisdiction).  Based on this authority, the Court declines to rule otherwise here.

## III.  Abstention

The final issue for resolution, also raised by the Court *sua sponte*, concerns abstention.  It has been noted that "the landlord-tenant relationship is fundamentally a matter of state law."  Hearn v. Lin, No. 01-CV-8208, 2002 WL 720829, at *4 (E.D.N.Y. Feb. 14, 2002).  For this reason, even where jurisdiction otherwise exists, courts often abstain from hearing eviction matters to avoid "completely emasculat[ing] the state structure for dealing with such disputes."  Ali, 1997 WL 285043, at *1 (quoting Glen 6, 770 F. Supp. at 229); accord, e.g., CPG, 2006 WL 744275, at *4; Andujar, 230 F. Supp. 2d at 354; Camprubi-Soms v. Aranda, Nos. 00 Civ. 9626, 01 Civ. 4706, 2001 WL 716945, at *1 (S.D.N.Y. June 26, 2001).  Although the Court could abstain from hearing this action on this basis, see Burford v. Sun Oil Co., 319 U.S. 315, 317-34 (1943), it declines to do so for two reasons.

First, abstention "is the exception, not the rule," Colo. River Water Conservation Dist. v. United States, 424 U.S. 800, 813 (1976), because federal courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given them," id. at 817.  Standing alone, the presence of state-law issues, even important ones, is not enough to require abstention.  See, e.g., Dali (USA), Inc. v. Lee, No. 96 Civ. 3305, 1996 WL 592723, at *5 (S.D.N.Y. Oct. 16, 1996).  Indeed, "[a]ny rule to the contrary would make all diversity actions dismissable."  Id.  Second, Office Depot has asserted significant counterclaims in

this case, which cannot be considered in a summary eviction proceeding in Minnesota state court – a separate action is required to litigate such claims.  See, e.g., Amresco Residential Mortgage Corp. v. Stange, 631 N.W.2d 444, 445-46 (Minn. Ct. App. 2001). Hence, abstaining from this case and remanding it would result in piecemeal litigation, a result the Court need not countenance when it can effectively consider both the claims and the counterclaims in one forum here.[5]

## CONCLUSION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS ORDERED** as follows:

1.      MCC's Motion to Remand (Doc. No. 4) is **DENIED**;[6] and

2.      This matter is **REFERRED** to Magistrate Judge Keyes for an expedited pretrial conference.  Although the discovery period and trial date are left to Judge Keyes's discretion, each should be set bearing in mind the expeditious nature of this matter.[7]

Dated: February 12, 2010                                   s/Richard H. Kyle                          
                                                           RICHARD H. KYLE
                                                           United States District Judge

---

[5] The Court also notes that MCC did not raise abstention in moving to remand; the issue only arose *sua sponte*.

[6] It goes without saying that MCC's request for attorneys' fees due to Office Depot's "improper" removal also is denied.

[7] The parties are also strongly encouraged to discuss resolving this matter short of trial, either with or without Judge Keyes's assistance.